FILED
SUPERIOR COURT
OF GUAM

2018 MAR 20 PM 3: 02

CLERK OF COURT

BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| JOFFRE ANDRE GUILLIOD,<br><br>                     Plaintiff,<br><br>vs.<br><br>ROSANA RAQUEL GUILLIOD,<br><br>                     Defendant. | DOMESTIC CASE NO. DM 0462-11<br><br>**FINDINGS OF FACT &**<br>**CONCLUSIONS OF LAW** |

**INTRODUCTION**

This matter came before the Honorable Arthur R. Barcinas on January 12, 2018, for a hearing upon Plaintiff's Motion to Modify Custody, filed on June 20, 2017. Attorney Daniel S. Somerfleck represented the Plaintiff Joffre Andre Guilliod ("Plaintiff"), and Defendant Rosana Raquel Guilliod ("Defendant") appeared *pro se* with the assistance of a court interpreter. Upon review of the pleadings, the applicable statutes and case law, and the testimony and documentary evidence presented in this matter, the Court now issues these Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

By a preponderance of evidence, the Court makes the following findings of fact:

1.  Plaintiff and Defendant were married in January 1997 in the State of Florida.

2.  The parties have one (1) minor child together, J.A.G. (DOB: 02/19/2006).

3. The parties were divorced in Guam on August 22, 2011. See Final Decree of Divorce, Aug. 22, 2011.

4. Pursuant to a Marital Settlement Agreement – the terms of which were attached and fully incorporated into the Interlocutory Judgment of Divorce – the parties agreed to share joint legal custody of J.A.G., with the Defendant having primary physical custody and the Plaintiff having summertime visitation and yearly alternating winter and spring break visitation, as well as times when the Plaintiff is close to the child's residence. See Interlocutory Judgment of Divorce at Attachment (Marital Settlement Agreement), Apr. 22, 2011.

5. The Marital Settlement Agreement further provided that the Defendant could relocate with the child upon ninety (90) days advance notice and required the Defendant to keep Plaintiff informed at all times of Defendant's residential address, phone number, and email. In addition, the Marital Settlement Agreement required Plaintiff to have access to information and records, open communication with the child and forty-eight (48) hour notice of any change of address or telephone of the child for any period in excess of seven (7) days.

6. In or around July 2011, following the parties' separation and before the divorce was finalized, the Defendant left Guam and moved with J.A.G. to Valencia, Venezuela, to reside with the Defendant's sister and immediate family. J.A.G. resided in Venezuela under a tourist visa.

7. Approximately a year later, the Defendant moved with J.A.G. to Olney, Maryland, to live with a relative. Defendant enrolled J.A.G. in the local public school in which J.A.G. was held back one (1) grade level.

8. Shortly thereafter, approximately four (4) months later, Defendant left Olney, Maryland, and moved back to Valencia, Venezuela.

9. In November 2016, Defendant informed Plaintiff of her intent to move back to the United States. In anticipation of the move, Defendant moved out of the apartment she shared with her fiancé and temporarily moved in to a hotel with J.A.G, where they stayed for several months.

10. In or around March 2017, after checking out of the hotel, the Defendant and J.A.G. temporarily resided with friends and family until the Defendant and J.A.G. moved back into another apartment in Venezuela.

11. In April 2017, Defendant informed Plaintiff that she would be moving with J.A.G. to Orlando, Florida. Defendant and J.A.G. traveled to Eugene, Oregon, where the Defendant renewed J.A.G.'s tourist visa. Thereafter, Defendant and J.A.G. met with the Plaintiff in Houston, Texas, so Plaintiff could pick up J.A.G. for his spring break visitation time. After spending ten days with the Plaintiff, J.A.G. travelled back with Defendant to Eugene, Oregon.

12. The following month, in May 2017, the Defendant finally moved with J.A.G. to Kissimmee, Florida, a city just south of Orlando, Florida, where they moved in with one of the Defendant's friends for approximately three months.

13. On June 4, 2017, the Plaintiff picked up J.A.G. for his summertime visitation. During this time, Plaintiff and J.A.G. travelled back to Guam.

14. In or around July 2017, while J.A.G. was with the Plaintiff, the Defendant moved out of her friend's house and into an apartment in Orlando, Florida.

15. From April 2017, when Defendant and J.A.G. moved back to the United States, to June 2017, when Plaintiff picked up J.A.G. for his summer visitation, J.A.G. had not been attending school. The Defendant, however, maintains that J.A.G.'s school in Venezuela authorized a homeschooling program while he was abroad in order for J.A.G. to complete his current school year.

16. After arriving in Guam, the Plaintiff enrolled J.A.G. at Harvest Christian Academy. Based on the principal's recommendation, J.A.G. was placed in a homeschool program guided by Harvest and immediately began taking summer classes.

17. On June 20, 2017, Plaintiff filed a Motion to Modify Custody. In his motion, Plaintiff requested that the Court grant the Plaintiff primary physical custody of J.A.G. with reasonable visitation to the Defendant. See Motion to Modify Custody, June 20, 2017.

18. On September 1, 2017, the Court held a hearing on Plaintiff's Motion to Modify Custody. At the hearing, the Court ordered the Defendant to obtain and file with the Court all of J.A.G.'s school records from 2012, all medical reports, and psychologist reports by September 15, 2017. In addition, the Court allowed J.A.G. to remain in Guam in the Plaintiff's custody and care, and allowed J.A.G. to continue his schooling at Harvest Christian Academy. The Court entered a temporary visitation order in which the Defendant could contact J.A.G. via video call for no longer than fifteen (15) minutes on Mondays, Wednesdays, and Fridays at 7:00 AM Guam time, and weekends no later than 5:30 PM Guam time.

19. On October 20, 2017, Plaintiff received a phone call from Defendant informing him that she was in Guam and requesting visitation with J.A.G. The parties agreed that Defendant would have afternoon visitation and the Plaintiff dropped J.A.G. to the Defendant the

next day. That afternoon, the Plaintiff received a phone call from Defendant concerning allegations that J.A.G. was being mistreated and that the Defendant had gone to the Tamuning Police Station for advice concerning custody of J.A.G. Based on the original divorce decree the Defendant provided, the police determined that the Defendant had primary physical custody of J.A.G. The Plaintiff contacted the police department and was told that without legal documents showing that the Plaintiff had primary physical custody, there was nothing the police could do. The Defendant did not return J.A.G. to the Plaintiff after the agreed upon afternoon visitation.

20. On October 23, 2017, afraid that the Defendant would attempt to depart Guam with J.A.G., the Plaintiff filed an *Ex Parte* Motion for Order to Show Cause. In his *Ex Parte* Motion, Plaintiff requested that the Court order the Defendant to appear before the Court to show cause why: 1) the Court should not modify the current custody arrangement and grant Plaintiff *pendente lite* physical custody of J.A.G. with reasonable supervised visitation with Defendant; 2) why Defendant should not be enjoined and restrained from interfering with Plaintiff's custody of J.A.G.; and 3) why Defendant should not be enjoined and restrained from removing J.A.G. from Guam. See Ex Parte Motion for Order to Show Cause, October 23, 2017.

21. On November 3, 2017, the Court granted Plaintiff's *Ex Parte* Motion and awarded the Plaintiff *pendente lite* legal and physical custody of J.A.G until the hearing on Plaintiff's Motion to Modify Custody. The Court entered temporary visitation orders in which the Defendant would have visitation with J.A.G. on Mondays and Wednesdays from when J.A.G. is released from school until 5:00 PM, on Tuesdays and Thursdays from when J.A.G. is released from school until 7:00 PM, and on Fridays from when J.A.G. is

released from school until 5:00 PM on Saturday. The Defendant was also enjoined and restrained from removing J.A.G. from Guam. See Order After Hearing, November 6, 2017.

22. A continued hearing on Plaintiff's Motion to Modify Custody was held on January 12, 2018. Both parties provided oral testimony and evidence in support of their abilities to care for J.A.G. and their concerns for his physical and emotional well-being.

23. The Plaintiff testified regarding J.A.G's education and excessive absences from school while under the care and custody of the Defendant. The Plaintiff also expressed concerns regarding J.A.G.'s emotional well-being and testified to pressures the Defendant would place on J.A.G., including misleading the child about events that occurred during the parties' relationship, as well as the relationship between the Plaintiff and J.A.G. Further, the Plaintiff testified regarding his concerns about the stability of the Defendant, including her numerous relocations with J.A.G. since the parties' divorce, her dependence on others for housing and support, and her lack of employment.

24. The Defendant, denying Plaintiff's allegations, testified that she actively searched for a school for J.A.G. to attend while she was in Florida. The Defendant also testified that she believes J.A.G. does not receive appropriate medical care while in the Plaintiff's care and custody. Further, the Plaintiff testified that since she moved back to Guam, she believes that she has had her car repossessed, that she has lost her residence, and that she has also lost her employment in Orlando, Florida. Lastly, the Defendant expressed her intent to return to Orlando, Florida, in order to be closer to her family in Valenzuela.

25. At the hearing, the Court took the matter under advisement and ordered the parties to file their Proposed Findings of Fact and Conclusions of Law no later than January 29, 2018.

Plaintiff filed his Proposed Findings of Fact on January 22, 2018, and the Defendant filed her Response to Plaintiff's Findings of Fact on January 26, 2018.

## CONCLUSIONS OF LAW

The Court now issues the following conclusions of law on the matter:

1.  When the Court analyzes a dispute regarding the custody of a minor child, "the court may, during the minority of the child, make such order for the custody of such minor child as may seem necessary or proper." 19 GCA § 8404.

2.  The primary consideration when determining child custody is the best interests of the child. Lanser v. Lanser, 2003 Guam 14 ¶ 16.

3.  Custody awards are subject to modification whenever the best interest of the child require or justify a modification or change. 19 GCA § 8404(f) (2005).

4.  Once a court finds that a change in custody is necessary, the sole issue before the court is "determining the best interest of the children, not the children and their mother, and not the children and their father. Lanser v. Lanser, 2003 Guam 14 ¶ 16.

5.  It is legislative policy that children spend as much time with each of their parents as possible, when the parents are not living together, subject to the condition that this must be in the best interest of the child. See 19 GCA § 8404(h)(1) (2005).

6.  Under Guam law, there is a preference for both joint legal and joint physical custody arrangements, but the preference for joint custody is always secondary to the best interests of the children. See Howerton v. Howerton, 204 Guam 8 ¶ 14.

7.  Legal custody is defined as "the right and obligation to make long range decisions involving education, religious training, discipline, medical care, and other matters of major significance concerning the child's life and welfare," while physical custody is

defined as, "the right and obligation to provide a home for the child and to make the day-to-day decisions required during the time the child is actually with the parent having custody." Id. at ¶¶ 12-13 (citations omitted).

8. The minor child, J.A.G., is currently twelve (12) years old and has resided with the Plaintiff under his care and custody since returning to Guam with the Plaintiff in April 2017. Prior to his return to Guam, J.A.G. had been under the care and custody of the Defendant since the parties' divorce back in 2011. As per the parties' Marital Settlement Agreement, Defendant had primary physical custody of J.A.G. with the Plaintiff having summer and alternating winter and spring break visitation. While with the Defendant, J.A.G. has moved back and forth from Venezuela to different cities in the United States several times. As a result, J.A.G. was continuously absent from school and lacked a stable home environment.

9. Due to the Defendant's instability and Plaintiff's concern for J.A.G.'s well-being, Plaintiff filed a Motion to Modify Custody requesting that the Court grant him primary physical custody of J.A.G. with reasonable visitation to the Defendant. Following a hearing for an Order to Show Cause, the Plaintiff was awarded *pendente lite* legal and physical custody of J.A.G., with the Defendant having reasonable visitation. Since returning to Guam, Plaintiff has ensured that J.A.G. regularly attends school, has enrolled J.A.G. in summer classes, and has provided J.A.G. with a safe and consistent home environment. The Court finds that the Plaintiff has provided and continues to provide J.A.G. with a loving and stable environment in his home, one that includes his wife and two stepdaughters, who help support and take care of J.A.G. The Court also

finds that Plaintiff's stable employment at United Airlines as a pilot provides sufficient income to financially support and care for J.A.G and his family.

10. The Court acknowledges both parties' individual abilities to raise and nurture J.A.G. However, the Court is also cognizant of the parties' turbulent relationship caused by this matter and is concerned that such conflict between the parties places the minor child in the middle of their dispute. The Court is also concerned that the emotional well-being of the minor child may be at risk and finds that it is in J.A.G.'s best interest to remain in the Plaintiff's primary custody and care, and in the comfortable and stable environment that he provides.

11. Thus, to ensure J.A.G.'s stable upbringing, the Court finds that it is in the minor child's best interest for the Plaintiff to have primary physical custody of J.A.G. and for the Defendant to have reasonable visitation.

12. The Defendant shall have weekend visitation with J.A.G. beginning on Fridays from when J.A.G. is released from school until 5:00 PM the following Sunday. In addition to weekend visitation, the Defendant may have visitation with J.A.G. on Mondays and Wednesdays from when J.A.G. is released from school until 7:00 PM, and on Tuesdays and Thursdays from when J.A.G. is released from school until 7:00 PM. It shall be the Defendant's responsibility to pick up J.A.G. from school and return J.A.G. to the Plaintiff at his residence at the designated time.

13. Further, the Court orders that the parties continue to share joint legal custody so that neither party is excluded from making important decisions concerning J.A.G.'s upbringing, including but not limited to, J.A.G.'s education, religious training,

discipline, medical care, and other matters of major significance concerning J.A.G.'s life and welfare.

14. Finally, the Court enjoins the parties from making any negative or disparaging remarks about the other parent or allowing any third-party to do so in the presence of the minor child. Neither party shall discuss custody or court-related issues around the minor child unless directed to do so by the Court.

## CONCLUSION

In accordance with these findings of fact and conclusions of law, the Court GRANTS the Plaintiff's Motion to Modify Custody. Thus, in considering the best interest of the minor child, J.A.G., the Court ORDERS the following:

1. The Plaintiff, Joffre Andre Guilliod, shall have primary physical custody of J.A.G. and the Defendant, Rosana Raquel Guilliod, shall have reasonable visitation.

2. The Defendant shall have weekend visitation with J.A.G. beginning on Fridays from when J.A.G. is released from school until 5:00 PM the following Sunday. In addition to weekend visitation, the Defendant may have visitation with J.A.G. on Mondays and Wednesdays from when J.A.G. is released from school until 7:00 PM, and on Tuesdays and Thursdays from when J.A.G. is released from school until 7:00 PM. It shall be the Defendant's responsibility to pick up J.A.G. from school and return J.A.G. to the Plaintiff at his residence at the designated time. Visitation periods may be adjusted by mutual agreement of the parties.

3. The Defendant's visitation schedule is applicable only in Guam. Therefore, should the Defendant decide to leave Guam for any reason, the Defendant shall provide the Plaintiff with at least forty-eight hours (48) notice so that the parties can arrange for a

reasonable telephone and/or electronic communication schedule as mutually agreed upon by the parties.

4. The Court orders that the parties continue to share joint legal custody so that neither party is excluded from making important decisions concerning J.A.G.'s upbringing, including but not limited to, J.A.G.'s education, religious training, discipline, medical care, and other matters of major significance concerning J.A.G.'s life and welfare.

5. Further, neither party shall remove J.A.G. from the Territory of Guam without the consent of the other party or authorization from the Court.

6. The Court enjoins the parties from making any negative or disparaging remarks about the other parent or the other parent's family members in the presence of the minor child. In addition, neither party shall discourage the minor child from seeing or communicating with the other party, and shall not discuss custody or court-related issues around the minor child unless directed to do so by the Court.

7. Lastly, child support should be modified to reflect the change in custody. Therefore, both parties shall exchange financial information so that their attorneys can calculate child support pursuant to the Guam Child Support Guidelines. If the parties are unable to agree on a child support amount, either party may request a hearing before the Child Support Referee regarding modification of child support.

**IT IS SO ORDERED** ____ MAR 2 0 2018 ____.

SERVICE VIA COURT COPY

I acknowledge that a copy e
al hereof was d in the
c x of:

D. Somefuac

Date 3/20/18 Time 3:20

Deputy Clerk, Superior Court of Guam

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**